**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | | |
|---|---|---|
| Nathaniel Keith Watty | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 4:10-cv-2056-PMD-TER |
| v. | ) | |
| | ) | |
| Sheriff of Clarendon County; | ) | **ORDER** |
| Randy Garrett, Jr., Sheriff; | ) | |
| Peter Surette, Captain; | ) | |
| Brandon Braxton, Deputy Sheriff; | ) | |
| Curtis Hickman, Deputy Sheriff; | ) | |
| Pat Coker, Deputy Sheriff; and | ) | |
| Kip Coker, Deputy Sheriff; | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court upon the Report and Recommendation ("R&R") of Magistrate Judge Thomas E. Rogers recommending that Plaintiff's amended motion for summary judgment be denied, and Defendants' motion for summary judgment be granted as to all claims <u>except</u> the Fourth Amendment claim against Defendant Brandon Braxton. Also before the Court are Defendants' and Plaintiff Nathaniel Keith Watty's ("Plaintiff" or "Watty") objections to the R&R.[1] For the reasons set forth below, the Court adopts the R&R and fully incorporates it into this Order.

---

[1] A petitioner may object, in writing, to an R&R within ten days after being served with a copy of that report. 28 U.S.C. § 636 (b)(1). Both Defendants' and Plaintiff's objections were timely filed.

1

## BACKGROUND

### I. Procedural History

On August 6, 2010, Plaintiff, proceeding *pro se*, instigated this civil rights action pursuant to 42 U.S.C. § 1983[2] against Defendants Sheriff of Clarendon County ("the Sheriff's Office"), Sheriff Randy Garrett ("the Sheriff"), Captain Peter Surette ("Captain Surette"), Deputy Sheriff Brandon Braxton ("Deputy Braxton"), Deputy Sheriff Curtis Hickman ("Deputy Hickman"), Deputy Sheriff Pat Coker, and Deputy Sheriff Kip Coker (collectively, "Defendants"). Watty's Complaint alleges that Defendants violated his constitutional right to be free from unreasonable search and seizure as protected by the Fourth Amendment during a traffic stop on June 16, 2010; violated his right to be free from racial profiling as protected by the Equal Protection Clause of the Fourteenth Amendment; conspired to violate his constitutional rights; and violated unspecified rights protected by the Fifth Amendment. On March 9, 2012, Plaintiff filed an amended motion for summary judgment,[3] and on March 12, 2012, Defendants filed a motion for summary judgment. In his R&R, the Magistrate Judge recommended that Plaintiff's amended motion for summary judgment be denied, and Defendants' motion for summary judgment be granted as to all claims except the Fourth Amendment claim against Deputy Braxton.

### II. Facts

Plaintiff was stopped on the morning of June 16, 2010, while traveling on Interstate 95 in Clarendon County after Deputy Braxton noticed that a light on Plaintiff's car was not

---

[2] A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

[3] The Magistrate Judge incorporated Plaintiff's original motion for summary judgment, filed on July 25, 2011, into Plaintiff's amended motion for summary judgment.

functioning. Braxton Aff. ¶ 2; Pl.'s Dep. pp. 66-69. After approaching Plaintiff's driver's door, Braxton began to notice signs of possible criminal activity. Braxton Aff. ¶ 5. According to Braxton, Plaintiff's car appeared to be "lived-in" as evidenced by food in the back floorboard, Plaintiff was disheveled, and Plaintiff appeared to be nervous and evasive in answering simple questions. *Id.* at ¶ 7; Braxton Dep. pp. 16–18; Pl.'s Dep. p. 106. Plaintiff admitted that he had driven through the night, slept in his car for several hours just prior to the stop, and had not showered. Pl.'s Dep. pp. 55-58. Braxton averred that he had been trained to observe signs of possible criminal activity on a drug corridor like I-95. Braxton Aff. ¶ 6. Further, Plaintiff's car had license plates from New York, and Braxton was aware that I-95 is a known route for drug carriers between Florida and New York. *Id.* at ¶¶ 6-7. Braxton also averred that Plaintiff had three cell phones in plain view in the center console of the vehicle. *Id.* at ¶ 8; Braxton Dep. p. 17. However, Plaintiff asserts that two of his three cell phones were located in one of his bags and were not discovered until after the officers searched his bags. Pl.'s Resp. [Doc. 176] pp. 10, 11; Pl.'s Dep. p. 106.

After Braxton stopped Plaintiff, Plaintiff asked if he could look at the light that was out. Pl.'s Dep. p. 67. Plaintiff noticed that the light looked dim compared to the others, but it was not out. Pl.'s Dep. pp. 67-68. According to Braxton, Plaintiff continued to act very nervous as he exited the vehicle. Braxton Aff. ¶ 9. Plaintiff told Braxton that he had his car inspected before he left New York so he would not get stopped. Pl.'s Dep. pp. 67-68. Plaintiff indicated he was going to pick up his kids in Albany, Georgia, and Braxton noted that I-95 was not the most direct route to Albany from New York. Braxton Aff. ¶ 10; Surrett Dep. p. 6. In addition, Plaintiff could not say exactly where in Albany he was going. Braxton Aff. ¶ 10. Braxton further averred that when asked about his kids, Plaintiff had difficulty providing answers about them and even

3

made Braxton repeat his questions. *Id.* at ¶ 11. Plaintiff, however, asserts that this is a false statement. Pl.s' Resp. pp. 13, 14.

Plaintiff also notified Braxton that he was a law enforcement officer and showed him his badge and two other pieces of identification along with his license and registration. Pl.'s Dep. p. 69. Braxton went to his car to complete his paper work, and when he returned he asked Plaintiff if he could search the car, and Plaintiff refused consent to search. Braxton Aff. at ¶ 13; Pl.'s Dep. p.73. Braxton then called for a drug dog to perform a sniff of Plaintiff's vehicle. Braxton Aff. ¶ 14. He also called for back-up, and Deputy Hickman was the first deputy to arrive on the scene. *Id.* at ¶ 15. Hickman averred he arrived at the scene around 7:30 a.m., and Plaintiff estimated it was approximately thirty minutes from the beginning of the stop, which would be approximately 7:40 a.m. Hickman Aff. ¶ 2; Pl.'s Dep. p. 76. Braxton stated that Deputy Kip Coker arrived with the drug dog approximately thirty minutes after Braxton called for the drug dog. Braxton Aff. ¶ 16. Plaintiff testified that he arrived approximately an hour after the initial stop. Pl.'s Dep. p. 79. Kip Coker walked his drug dog around Plaintiff's car, and it alerted on the driver's door of Plaintiff's car. Braxton Aff. ¶ 17; Pl.'s Dep. p. 101. Kip Coker and Braxton then searched the interior of Plaintiff's car, and Hickman searched the trunk. Braxton Aff. ¶ 18; Pl.'s Dep. pp. 102-103; Kip Coker Aff. ¶ 10; Hickman Aff. ¶ 9. Deputy Pat Coker arrived at some point and stood with Plaintiff during the search. Braxton Aff. ¶ 19; Pl.'s Dep. p. 89. When the officers could not find any drugs, Plaintiff was told he was free to leave, and he left sometime after 9:00 a.m. that morning. Braxton Aff. ¶¶ 20-21; Kip Coker Aff. ¶¶ 12-13; Hickman Aff. ¶¶ 11-12.

**STANDARD OF REVIEW**

**I.     Magistrate Judge's R&R**

The Magistrate Judge only makes a recommendation to the Court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's R&R within fourteen days after being served a copy of the report. 28 U.S.C. § 636(b)(1). This Court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered, and the court may accept, reject, or modify the R&R in whole or in part. *Id.* Additionally, the Court may recommit the matter to the Magistrate Judge with instructions. *Id.* A party's failure to object is accepted as an agreement with the conclusions of the Magistrate Judge. *See Thomas v. Arn*, 474 U.S. 140 (1985). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

**II.    Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary

judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

### III. *Pro Se* Litigant

Plaintiff is acting *pro se* in this action. A court is charged with liberally construing the pleadings of a *pro se* litigant. *See, e.g.*, *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). The requirement of a liberal construction does not mean, however, that the court can ignore a plaintiff's clear failure to allege facts that set forth a cognizable claim, or that a court must assume the existence of a genuine issue of material fact where none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012).

### **DISCUSSION**

Defendants make two specific objections to the R&R's recommendation as to the Fourth Amendment claim against Deputy Braxton, including the denial of qualified immunity. Plaintiff makes numerous objections to the R&R's recommendation that his amended motion for summary judgment be denied. The Court notes, however, that Plaintiff makes several general objections without explaining why the Magistrate Judge's treatment of the issues at hand was incorrect. The Court does not find that these generalized objections are sufficient to raise any questions about the Magistrate Judge's R&R and will only address those specific objections made by Plaintiff. *See Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983) (in the absence of specific objections, the court need not give any explanation for adopting the magistrate Judge's analysis and recommendations). The objections will be addressed in turn.

**I.       Defendants' Objections**

      A.       <u>Fourth Amendment Claim Against Deputy Braxton</u>

Plaintiff alleges that the interrogation and detention following the initial traffic stop violated his Fourth Amendment rights.[4]  Defendants object to the R&R's denial of their motion for summary judgment as to Plaintiff's Fourth Amendment claim against Deputy Braxton.  The Magistrate Judge denied summary judgment because issues of fact exist regarding whether Braxton had reasonable suspicion of criminal activity to extend the initial traffic stop into an investigatory stop.

As correctly noted by Defendants, the Fourth Circuit in *United States v. Branch*, 537 F.3d 32 (4th Cir. 2008), set forth a framework to guide judicial evaluation of an investigatory detention: (1) the "officer must simply point to specific and articulable facts which, taken together with rational inferences from those facts, evince more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity"; (2) the Court "must take a commonsense and contextual approach to evaluating the legality of [the] stop"; (3) the Court should consider the totality of the circumstances known to the officer; and (4) the "officer's decision to stop and detain an individual must be evaluated objectively." *Id.* at 336-337; *see* Defs.' Obj. 3.  Defendants point to both Deputy Braxton's affidavit and deposition wherein, as noted by the Magistrate Judge, he pointed to "numerous, specific facts which led him to suspect criminal activity." R&R 9.  Braxton averred that Plaintiff's vehicle appeared to be "lived-in" as

---

[4] Plaintiff conceded that the initial detention (when his vehicle was pulled over) was lawful, given that the light on the right front of his vehicle was dim in comparison to the light on the left side of his vehicle. Pl.'s Dep. p. 200.  As such, the R&R correctly concluded that probable cause existed for Deputy Braxton to believe that Plaintiff had committed a traffic violation and therefore, lawfully initiated a traffic stop. R&R 7; see *Whren v. United States*, 517 U.S. 806, 817-19 (1996) (holding that probable cause to believe that traffic violation has occurred is sufficient to justify stop). Therefore, any objection by Plaintiff as to this finding by the Magistrate Judge is overruled.

evidenced by food in the back floorboard; the vehicle had New York license plates; Plaintiff appeared to be disheveled;[5] three cellular telephones were in the center console; Plaintiff was breathing heavily and sweating and appeared nervous; Plaintiff's hands were shaking as he provided Braxton with his license and registration; Plaintiff hesitated when answering simple questions; Plaintiff could not state where in Albany, Georgia he was going; Braxton knew that I-95 is a well-known corridor for drug carriers; and I-95 was not the most direct route to Albany, Georgia from New York.  In considering the totality of the record, Defendants contend that Deputy Braxton clearly had reasonable suspicion to extend the stop.

However, as noted by the Magistrate Judge, Plaintiff disputes many of these factors.  In fact, the only undisputed factors set forth by Deputy Braxton are that Plaintiff's vehicle appeared "lived-in," the vehicle had New York plates, and Plaintiff was traveling on I-95 from New York.[6]  The R&R correctly concluded that these factors alone are insufficient to create reasonable suspicion of criminal activity. *See United States v. Santiago*, 2012 WL 2343281, at *7-8 (E.D. Va. June 19, 2012) (holding that factors such as traveling on I-95 and fast food bags in the vehicle do not indicate criminal activity, as such factors do not eliminate a substantial portion of innocent travelers). Defendants argue, however, that Plaintiff's denial of some of the factors allegedly observed by Deputy Braxton does not mean a reasonable officer could not have reasonably believed these factors were present. Defs.' Obj. 5.

In reviewing the record, it is apparent to the Court that the facts surrounding Deputy Braxton's stop of Plaintiff's car are hotly contested. Plaintiff asserts (1) that only one of his cell

---

[5] Plaintiff admitted that he had driven through the night, slept in his car for several hours just prior to the stop, and had not showered. Pl.'s Depo pp. 55-58.

[6] Defendants also state in a footnote that it is undisputed that I-95 is not the most direct route between New York and Albany, Georgia, and therefore, this fact lends credence to Deputy Braxton's belief of possible criminal activity.  However, upon conducting a brief internet search, it appears that taking I-95, instead of I-20, is the fastest route.

phones was in plain view (and that the other two were discovered when the officers searched his bags); (2) that as a retired solider and supervisory police officer he has been trained to control his fears and emotions and was not nervous, sweating, or shaking; (3) and that Deputy Braxton's statement that he was unable to state where in Albany, Georgia he was headed is inconsistent with the Incident Report.  Notably, the only factor out of those mentioned above by Defendants that Deputy Braxton included in the Incident Report—which is the only documented evidence dated the same day as the incident—is the following: "Deputy Braxton asked Mr. Watty were [sic] he was going in casual conversation. Mr. Watty hesitated as if he was not real sure were [sic] he was heading. Mr. Watty stated Albany, Georgia. Deputy Braxton asked Mr. Watty some other question and Mr. Watty had the same response, hesitated as if he didn't know the answers." Incident Report [Doc. 39; Attachment #1].  Plaintiff argues that the remaining factors cited by Braxton, which were not included in the Incident Report, were "manufactured" after this litigation. Pl.'s Resp. ¶ 14.  The Court finds that based on the many disputed facts in the record, the Magistrate Judge correctly found that he could not, as a matter of law, conclude that Deputy Braxton had reasonable suspicion of criminal activity to extend the traffic stop into an investigatory stop.[7] *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment . . . if there is no genuine dispute as to any material fact . . . .").

Moreover, the Fourth Amendment cases that Defendants rely on in support of their objection can be distinguished from the case at hand.  Unlike in *United States v. Newland*, 246 F. App'x 180 (4th Cir. 2007), and *United States v. Melendez*, No. WDQ-10-0114, 2011 WL 2462085 (D. Md. June 16, 2011), Watty was not driving a one-way rental car, but his own car, and Deputy Braxton did not have any immediate suspicion that Watty's license was fake.

---

[7] For the same reasons, the Court finds no merit in Plaintiff's objection to the Magistrate Judge's failure to grant his motion for summary judgment as to this claim.

Further, in *Melendez*, the driver would not look the officer directly in the eye whereas Watty spoke with Deputy Braxton in casual conservation and even asked Braxton if he could step out of his vehicle to look at the light that was supposedly out. Additionally, in *State v. Provet*, 706 S.E.2d 513, 518 (S.C. Ct. App. 2011), *cert. granted* (Oct. 3, 2012), the driver admitted that he did not have any luggage for his two-day trip and the vehicle was registered to a third party, which is very common in drug trafficking—two factors not present here. Therefore, Defendants' objection is without merit.

> B. <u>Qualified Immunity</u>

Defendants' second objection to the R&R's denial of their motion summary judgment as to Plaintiff's Fourth Amendment claim is based on qualified immunity. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). A defendant is entitled to summary judgment on grounds of qualified immunity when there is no genuine issue of material fact, and when the undisputed facts establish that the defendant is entitled to judgment as a matter of law. *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992). The Fourth Circuit has emphasized the importance of resolving the question of qualified immunity at the summary judgment stage rather than at trial. *Id.* at 313. However, the court has also recognized that the qualified immunity question can be difficult for a court to resolve as a matter of law, as it can at times require "factual determinations respecting disputed aspects of [a defendant's] conduct." *Id.* at 312. The importance of summary judgment in qualified immunity cases "does not mean . . . that summary

judgment doctrine is to be skewed from its ordinary operation to give special substantive favor to the defense, important as may be its early establishment." *Id.* at 313.

If the material facts were undisputed, this Court would apply clearly established law to determine whether Deputy Braxton is entitled to qualified immunity. However, "while the purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,' a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (quoting *Pritchett*, 973 F.2d at 313)). As discussed above, genuine issues of material fact exist as to whether Deputy Braxton had reasonable suspicion of criminal activity to justify extending Plaintiff's traffic stop into an investigatory stop. Although a jury ultimately may find that Deputy Braxton's account of the traffic stop is more credible, in viewing the facts in Plaintiff's favor, as the Court must do at this stage, the evidence is sufficient to support an inference that Plaintiff's Fourth Amendment rights were violated. *See Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Therefore, the Magistrate Judge correctly concluded that Defendants have failed to provide sufficient factual support for summary judgment on the issue of qualified immunity as to the Fourth Amendment claim against Deputy Braxton.[8] As such, the Court overrules Defendants' objection and affirms the R&R's ruling on this narrow issue.

---

[8] The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense. *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003).

**II.     Plaintiff's Objections**

   A.   Fourth Amendment Claim – Detention While Awaiting the Arrival of the Drug Dog & Search of Plaintiff's Vehicle

Plaintiff objects to the Magistrate Judge's failure to grant him summary judgment on his Fourth Amendment claim against Defendants based on his continued detention while waiting for the arrival of the drug dog, Tess, and for searching his car following Tess's alert. Plaintiff's reasoning for why the Magistrate Judge erred seems to be that "[i]f there are genuine issue[s] of material fact as noted for [the detention beyond the initial traffic stop], then Deputy Braxton and Hickman as well should not be granted immunity for my 4th, 5th, and 14th Amendment violation at this point as well." Pl.'s Obj. 7. Plaintiff states that Defendants violated his constitutional rights during each illegal detention, and therefore, he is entitled to summary judgment on his claims for monetary damages against these Defendants in their official capacities,[9] as well as in their individual capacities. *Id.* at 7. Plaintiff does not cite to any law in support of his position. Instead, Plaintiff simply states that "further activity was illegal," and therefore, Defendants "had no authority to conduct such [a] search with the dog." Pl.'s Obj. 9, 10. Plaintiff also argues that "the record shows that there was difficulty in having a drug dog brought to the scene in a timely manner" due to lack of proper management, planning, command, and control because Deputy Braxton called Captain Surrett (who was off duty) about the dog, who then called Deputy Kip Coker as opposed to Deputy Braxton calling Deputy Kip Coker directly. *Id.* at 12.

---

[9] The R&R granted Defendants' motion for summary judgment on Plaintiff's claims for monetary damages against all Defendants in their official capacities. R&R 6; s*ee Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Plaintiff does not discuss in his objections why the Magistrate Judge's ruling was incorrect. After reviewing the analysis in the R&R on this issue, the Court affirms the holding of the Magistrate Judge.

The R&R found that Deputy Braxton, Hickman, and Kip Coker were diligent in this part of the investigation. Braxton initially stopped Plaintiff at 7:11 a.m., and at approximately 7:30 a.m., Kip Coker was contacted on his cell and advised to bring Tess to the scene of the traffic stop. Kip Coker arrived on the scene at about 8:00 a.m., which was approximately 57 minutes after Braxton initiated the stop. In light of the numerous courts[10] that have held that a thirty minute delay or even an hour long delay is not so great as to exceed the brevity requirements of an investigative stop, the Magistrate Judge concluded that the delay while awaiting the drug dog was not excessive. The Court agrees with the findings of the Magistrate Judge on this issue, and therefore, finds no merit in Plaintiff's argument that he was excessively delayed.

Likewise, the Court finds no merit in Plaintiff's objection to the Magistrate Judge's holding that Tess's reliability was established and that after Tess gave a positive alert, probable cause existed to search the vehicle, including the trunk. R&R 16. As noted in the R&R, Deputy Kip Coker's 2010 K-9 Narcotic Detection Training certificate and the Coker-Tess narcotic detection team training certificates from 2010 establish Tess's reliability in detecting the presence of drugs. *See United States v. Koon Chung Wu*, 217 F. App'x 240, 245 (4th Cir. 2007) (holding that evidence of a drug dog's "training and certification [is] enough by itself to establish [the dog's] reliability so that his positive alerts for controlled substances established probable cause"). Thus, there is no dispute that once Tess alerted on Plaintiff's vehicle, Defendants had probable cause to search. *See id.* The closer issue is whether Defendants had a right to search the trunk of the vehicle. Plaintiff states that "the dog search began from the trunk rear, where no detection was made, to the driver's door where [an] alert was made," thus evidencing that the search of the trunk was not supported by probable cause. Pl.'s Obj. 13. However, in Plaintiff's

---

[10] *See* R&R 14-15 for cited cases.

13

amended motion for summary judgment, he states that he did not see the dog walk around his car as he was distracted by Deputy Pat Coker. Pl.'s Am. Summ. J. ¶ 10.  The R&R concluded that based on the facts in record, Tess's alert to the driver's side door was "sufficiently close to the trunk" to give the officers probable cause to believe it contained contraband.  *See United States v. Carter*, 300 F.3d 415, 422 (4th Cir. 2002) (holding that it is a question of fact whether a "dog's 'altering' was sufficiently close to the trunk to give [an officer] probable cause to believe it contained contraband").  In reviewing the record, the Court agrees with the Magistrate Judge that the officers had probable cause to search Plaintiff's trunk. *See United States v. Kelly*, 592 F.3d 586, 592 (4th Cir. 2010) ("Probable cause is simply not so exacting a standard that it requires a dog to be able to pinpoint the location of drugs within a foot or two."). Therefore, Plaintiff's objection is overruled.

### B.   Civil Conspiracy Claim

The Magistrate Judge recommended granting Defendants' motion for summary judgment as to Plaintiff's civil conspiracy claim. *See Hinkle v. City of Clarksburg, WV*, 81 F.3d 416, 421 (4th Cir. 1996) (noting that a plaintiff "ha[s] a weighty burden to establish a civil rights conspiracy"). According to the R&R, Plaintiff failed to produce sufficient evidence of an agreement to commit any acts, wrongful or otherwise, or evidence that would give rise to an inference that each Defendant shared the same conspiratorial objective.  The Court notes that, in his objections, Plaintiff simply repeats arguments previously made and rejected by the Magistrate Judge without explaining why the Magistrate Judge's ruling on this claim was incorrect. After reviewing the controlling case law and acknowledging the weighty burden on Plaintiff to establish this claim, the Court agrees with the holding and recommendation of the Magistrate Judge.

### C. Supervisory Liability

Plaintiff includes as Defendants in this action both the Sheriff and Captain Surette. The Magistrate Judge recommended dismissing all claims against these two Defendants. Plaintiff objects on the basis that Deputy Braxton called Captain Surette to help him with the drug dog, and therefore, Captain Surette "should have known that such delay by trying to contact Kip Coker was or would have cause[d] a prolong[ed] delay to the Plaintiff and that it was [Captain Surette's] responsibility to prevent such undue delay by pre[-]planning, yet such was not the case." Pl.'s Obj. 20. The Court is not persuaded by this argument. As discussed above, the delay while awaiting the drug dog was not excessive. As such, Captain Surette could not have known or "tacitly authorized or [been] indifferent to [his subordinates'] constitutional violations." *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). Moreover, as noted in the R&R, these Defendants were not present at the traffic stop, and Plaintiff does not allege any personal involvement by these Defendants. Therefore, the Court affirms the holding and recommendation of the Magistrate Judge that Plaintiff's claims against the Sheriff and Captain Surette be dismissed.

For the above reasons, the parties' objections are overruled, and the Court adopts and fully incorporates the R&R [Doc. 194] into this Order.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that Plaintiff's amended motion for summary judgment is **DENIED**. It is further **ORDERED** that Defendants' motion for summary judgment is **DENIED** as to Plaintiff's Fourth Amendment claim against Defendant Deputy Braxton and is **GRANTED** as to all other claims against Defendants.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**February 11, 2013**
**Charleston, SC**